# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| BARBARA H. MONEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:08CV895 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Barbara H. Money seeks judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner's final decision denying her claim for reinstatement of Disability Insurance Benefits. The Commissioner's denial decision became final on October 8, 2008, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge ("ALJ"). In this action, the parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

### The Claimant

Plaintiff was born on November 11, 1956, and was 45 years of age on the comparison point decision date. She has a limited education. Plaintiff has past relevant work experience as an assembly line worker.

## The Administrative Proceedings

In a decision dated November 26, 2001, Plaintiff was found disabled as of October 12, 2000. Subsequent to a mandated review, *see* 20 C.F.R. § 404.1589, the Social Security Administration ("SSA") notified Plaintiff that, as of December 1, 2004, she was no longer entitled to receive benefits. After Plaintiff requested reconsideration, a Disability Hearing Officer affirmed the cessation. Plaintiff requested a hearing before an ALJ, who, by decision dated May 30, 2008, determined that Plaintiff's disability ceased as of December 1, 2004. On October 8, 2008, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision final for purposes of judicial review.

In deciding that Plaintiff is no longer entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

1. The most recent favorable medical decision finding that the claimant was disabled is the decision dated November 26, 2001 (the "comparison point decision" or "CPD").

2. At the time of the CPD, Plaintiff had the following medically determinable impairments: non-union of left arm fracture, status post fractures to the left ribcage, pelvic fracture, left leg fracture and left arm fracture, status post bilateral carpal tunnel releases, anxiety, and depression. These impairments were found to meet section 1.12 of 20 C.F.R. Part 404, Subpart P, Appendix 1.

3. Through December 1, 2004, Plaintiff did not engage in substantial gainful activity.

4. The medical evidence establishes that as of December 1, 2004, Plaintiff has the following medically determinable impairments: major depressive disorder, recurrent, generalized anxiety disorder, carpal tunnel syndrome, and status post carpal tunnel releases bilaterally.

5. Since December 1, 2004, Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

6. Medical improvement occurred as of December 1, 2004.

7. This medical improvement is related to Plaintiff's ability to work because her CPD impairments no longer meet or medically equal the same listing that was met at the time of the CPD.

8. As of December 1, 2004, Plaintiff continues to have a severe impairment or impairments.

9. Plaintiff has the residual functional capacity to lift 20 pounds occasionally and 10 pounds frequently, sit for six hours, and stand or walk for two hours a day. She is limited to frequent pushing and pulling of arm controls and frequent handling and fingering. She should avoid ordinary

workplace hazards. She is able to understand, remember and carry out simple instructions, respond appropriately to supervisors and coworkers, handle changes in work place and maintain attendance. She is limited to frequent but not continued contact with the general public. She is able to work in proximity to coworkers but not in coordination with them.

10. Plaintiff is unable to perform her past relevant work.

11-13. As of December 1, 2004, Plaintiff is a younger individual. She has a limited education and can communicate in English. Transferability of job skills is not an issue in this case because Plaintiff's past relevant work is unskilled.

14. Considering Plaintiff's age, education, work experience and residual functional capacity, she is no longer disabled as of December 1, 2004.

15. Plaintiff's disability ceased on December 1, 2004.

(Tr. at 15-22.)

## The Scope of Review

The scope of review by this Court of the Commissioner's decision terminating benefits is limited. *Rice v. Shalala*, No. 93-1305, 1993 WL 309631, at *2 (4th Cir. Aug. 16, 1993)(unpublished). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th

Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case *de novo*. *Id.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted), or "evidence which . . . consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

## Discussion

The Act provides that for "eligible" individuals, benefits shall be available to those who are "under a disability," which is defined in the Act as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

Once the decision has been made to grant a claimant benefits, there is no presumption of continuing disability, *see id.* § 423(f)(4); rather, that decision is subject to periodic review. *See id.* § 404.1589. The prior determination – the "comparison point decision" – is used as a reference point from which to evaluate whether any medical improvement has been realized relating to the individual's ability to work. *Id.* § 404.1594. The Commissioner defines "medical improvement" as:

> [A]ny decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s).

*Id.* § 404.1594(b)(1).

In turn, the medical improvements that are relevant to a disability determination must be those that increase an individual's functional capacity to engage in gainful activity, i.e., the ability to do basic work. *Id.* § 404.1594(b)(3), (4). To make this determination, the Commissioner employs an eight-step sequential analysis:

(1) Is the beneficiary working?

(2) If not, does the impairment meet or equal a listing?

(3) If not, has there been any medical improvement?

(4) If medical improvement, does such improvement relate to the ability to work?

(5) If no improvement, does an exception apply?

(6) If there is an improvement related to work ability, are the current impairments, alone or in combination, "severe"?

(7) If there is a severe impairment, does the beneficiary's residual functional capacity ("RFC") permit performance of past work?

(8) If not, does the beneficiary have the RFC to perform other work?

*Id.* § 404.1594(f)(1)-(8). If the Commissioner finds conclusively that a claimant is disabled at any point in this process, review does not proceed to the next step. *See id.*

In this case, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity through December 1, 2004, the date Plaintiff's disability ended. (Tr. at 16.) At step two of the sequential evaluation, the ALJ found that Plaintiff no longer had an impairment, or combination of impairments, that met or equaled a listing in Appendix 1, Subpart P, Regulation Number 4. (*Id.*) At the third and fourth step of the evaluation, the ALJ found that Plaintiff's impairments had become less severe since the CPD. (*Id.*) The ALJ further found that such medical improvement was related to Plaintiff's ability to work. (*Id.* at 17.)

The fifth step in the evaluation does not apply to this case, because Plaintiff has experienced medical improvement. At the sixth step, the ALJ found that Plaintiff had severe impairments including major depressive disorder, recurrent, generalized anxiety disorder, carpal tunnel syndrome, and status post carpal tunnel releases bilaterally. (*Id.* at 16-17.) The ALJ concluded the sequential analysis at steps seven and eight by finding that Plaintiff no longer retains the residual functional capacity to perform her past relevant job as an assembly line worker, but that she is able to perform light work with only frequent pushing and pulling of arm controls and frequent handling and fingering. She should avoid ordinary workplace hazards. She is able to understand, remember and carry out simple instructions, respond appropriately to supervisors and coworkers, handle changes in work place and maintain

attendance. She is limited to frequent but not continued contact with the general public. She is able to work in proximity to coworkers but not in coordination with them. (*Id*. at 17-18.) Thus, the ALJ found that based on Plaintiff's age, education, work experience and residual functional capacity, Plaintiff's disability ended as of December 1, 2004. (*Id.* at 22.)

In this action for judicial review, Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to consider testimony by Plaintiff and her husband that Plaintiff suffers from disabling mental impairments. (Docket No. 8, Pl.'s Br. in Support of Mot. for Summ. J., at 3-4.) Plaintiff also contends that her claims of "extreme and debilitating emotional, psychological and psychiatric difficulties" are supported by the report of Dr. Uma Thotakura. (*Id.* at 3.)

It appears from the record that Dr. Thotakura drafted a letter to the Social Security Administration on behalf of Plaintiff on June 3, 2008. (Tr. at 471.) Dr. Thotakura reported that Plaintiff had been under her care since January 2005, and that Plaintiff was diagnosed with Bipolar Disorder, Mixed with Psychotic Symptoms, and Panic Disorder with Agoraphobia. (*Id.*) Dr. Thotakura further stated that Plaintiff "continues to experience Paranoia, Delusions and has not been able to function outside of home environment." (*Id.*) Dr. Thotakura stated that Plaintiff has extreme difficulty with attention and concentration, panic attacks, and fears being around other people, and opined that Plaintiff "would not be able to hold and function at any type of job, part or fulltime [sic] due to her emotional state." (*Id.*)

Dr. Thotakura's letter was submitted to and received into evidence by the Appeals Council after entry of the ALJ's decision. (*See id.* at 9.) Having received the letter, the Appeals Council nevertheless found no reason to review the ALJ's decision, implicitly finding that the decision is supported by substantial evidence, and that even considering the newly submitted evidence, the decision is not contrary to the weight of all the evidence in the record. (*See id.* at 6.) The Court agrees and finds that based on the record as a whole, substantial evidence supports the ALJ's findings.

A review of the ALJ's decision reveals that she discussed the medical evidence in detail. The ALJ considered treatment notes from Dr. Thotakura from January through September 2005, during which time Plaintiff was seen seven times. (*See id.* at 461-64.) Plaintiff testified that she continued to see Dr. Thotakura, but there are no further medical notes in the record. As noted by the ALJ, Dr. Thotakura diagnosed Plaintiff in January 2005 with bipolar disorder and generalized anxiety disorder, at a time when Plaintiff had been off of her medication. (*Id.* at 461.) By March, Dr. Thotakura reported that Plaintiff was generally tolerating her medications and her manic symptoms were less intense. (*Id.* at 462.) Plaintiff continued to complain of anxiety but by August 2005, reported "doing fairly well." (*Id.* at 464.) In September, although Plaintiff continued to complain of anxiety, Dr. Thotakura reported that Plaintiff's thought processes were better organized. (*Id.*)

The ALJ also considered treatment notes from Dr. Adrian M. Griffin, another of Plaintiff's treating psychiatrists. (*See id.* at 20.) Dr. Griffin had treated Plaintiff in the past,

and in February 2004, Plaintiff returned to resume treatment for her depression. Upon exam, Dr. Griffin found Plaintiff alert, rational, logical, very expressive and very warm. (*Id.* at 350.) Plaintiff reported no delusions, illusions, hallucinations or suicidal ideations. (*Id.*) Dr. Griffin diagnosed major depressive disorder, recurrent, mild to moderate, generalized anxiety disorder, and post-traumatic stress disorder ("PTSD"), stable. (*Id.* at 351.) Dr. Griffin noted that Plaintiff had worked through her PTSD "quite adequately" in the past, and had done "very well" on Prozac. (*Id.* at 350-51.) In November 2004, Plaintiff returned to Dr. Griffin, stating she was "having a hard time," but upon examination, her appearance, orientation, attention and concentration, language, speech, fund of knowledge, judgment, memory, mood, affect, organization, and thought processes were all normal. (*Id.* at 348.) By December, Plaintiff reported "doing so much better" and Dr. Griffin noted that Plaintiff does well on Prozac. (*Id.* at 347.)

The ALJ also considered the RFC assessments completed by Dr. Brian Grover and Dr. W. Henry Perkins, non-examining psychological consultants, and rendered an RFC finding that is consistent with their opinions. The ALJ concluded that Plaintiff is able to understand, remember and carry out simple instructions, respond appropriately to supervisors and coworkers, handle changes in work place and maintain attendance; she is limited to frequent but not continued contact with the general public; and she is able to work in proximity to coworkers but not in coordination with them. (*Id.* at 18.) Similarly, Dr. Perkins opined that Plaintiff is capable of performing simple, routine, repetitive tasks, can interact

appropriately with co-workers and is able to take directions from supervisors and adapt to change. (*Id.* at 418.) Dr. Grover also concluded that Plaintiff is able to perform simple, routine, repetitive tasks. (*Id.* at 361.) Thus, based on the record as a whole, the ALJ's findings are supported by substantial evidence.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for summary judgment (Docket No. 7) be denied, that the Commissioner's motion for judgment on the pleadings (Docket No. 9) be granted, and that judgment be entered in favor of the Commissioner.

/s/ P. Trevor Sharp
United States Magistrate Judge

Date: September 8, 2010