IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BARBARA H. MONEY, )
)
        Plaintiff, )
)
v. ) 1:08-cv-895
)
MICHAEL J. ASTRUE, Commissioner of )
Social Security, )
)
        Defendant. )

**MEMORANDUM OPINION AND ORDER**

CATHERINE C. EAGLES, District Judge.

      On October 13, 2000, Barbara Money was hit by a truck while walking. She suffered life-threatening injuries and, a year later, the Social Security Administration ("SSA") ruled that she was disabled. In December 2004, the SSA determined that she was no longer disabled and terminated her disability insurance benefits. Ms. Money has since run the gamut of the appeals process, including an evidentiary hearing before an Administrative Law Judge ("ALJ"), and now seeks relief in this Court. This case must be remanded for a new administrative determination because the SSA's decision that Ms. Money is able to work is supported by very thin evidence, her treating psychiatrist's new, material, and relevant report creates ambiguity in the record, raises new issues, presents material competing testimony, and calls into doubt the SSA's decision regarding her mental impairments, and the ALJ failed to make the requisite findings regarding the combined effect of Ms. Money's impairments.

      In the Recommendation, the Magistrate Judge accurately and clearly summarized the procedural history of Ms. Money's case, correctly stated the law that the ALJ should apply when

deciding whether to end someone's disability benefits, and properly recited the standard of review that this Court should apply when evaluating the ALJ's decision. (Doc. 13 at 1–8.) The Court adopts pages 1–8 of the Magistrate Judge's Recommendation in full and will not restate those principles in detail here.

I.     BACKGROUND

On October 13, 2000, Ms. Money was hit by a truck while crossing the street near her home. (Admin. R. ("A.R.") at 16, 17, 213, 227.) She suffered damage to her internal organs and multiple fractures. (*Id.* at 16.) These physical injuries aggravated and exacerbated her pre-existing history of depression. (*Id.* at 17.) A year later, the Commissioner found that Ms. Money was entitled to receive disability insurance benefits as of October 13, 2000, pursuant to the Social Security Act. (*Id.* at 38.)

Three years later, the Commissioner reviewed Ms. Money's status, determined that she was no longer disabled as of December 1, 2004, and terminated her disability insurance benefits. (*Id.* at 39, 41, 50.) After an evidentiary hearing in August 2007, the ALJ issued a decision on May 30, 2008, finding that Ms. Money's disability ended as of December 1, 2004, and that she was no longer entitled to disability insurance benefits. (*Id.* at 14, 22, 23.) Although the ALJ noted that Ms. Money continued to suffer from severe impairments, the ALJ concluded that these impairments resulted only in mild or moderate restrictions in her residual functional capacity. (*Id.* at 16, 17–21.)

On June 2, 2008, Ms. Money filed a request for review of the ALJ's decision with the Appeals Council. (*Id.* at 10.) While the request was pending, Ms. Money submitted additional evidence. (Doc. 1 at 2.) This evidence included a report, dated June 3, 2008, from Dr. Uma

Thotakura, who took over as Ms. Money's treating psychiatrist in January 2005.[1] (A.R. at 471.) In this report, Dr. Thotakura observed that:

> [Ms. Money] is diagnosed with Bipolar Disorder, Mixed with Psychotic Symptoms, and Panic Disorder with Agoraphobia. She continues to experience Paranoia Delusions and has not been able to function outside of home environment. [She] [h]as extreme difficulty with attention[] [and] concentration, has panic attacks, has fear of being around people, and would not be able to hold and function at any type of job, part or fulltime [sic] due to her emotional state. She has been having constant crying spells, is shaky[] [and] tremulous, feel[s][] helpless, hopeless, [and] worthless, and is experiencing an episode of depression. It is my recommendation that her Social Security Benefits be reinstated due to the severity of her Bipolar Illness and chronic pain resulting from multiple injuries.

(*Id.*)

In an order dated October 8, 2008, the Appeals Council acknowledged receipt of the additional evidence and incorporated it into the administrative record. (*Id.* at 9.) On the same day, the Appeals Council denied Ms. Money's request for review of the ALJ's decision in a summary order. (*Id.* at 6.) Thus, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.955(a), 404.981; *accord Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Ms. Money timely filed suit in this Court seeking judicial review. Although the complaint is far from a model of clarity, Ms. Money appears to allege that (1) the ALJ's conclusion that her disability ended on December 1, 2004, is not supported by substantial evidence; and (2) the ALJ violated the due process clause of the Fifth Amendment to the U.S. Constitution by (i) predetermining the outcome of the case; and (ii) subdelegating the responsibility for preparing the written decision to "some unknown group of people employed by

---

[1] Ms. Money also submitted medical reports from a treating physician, Dr. David Culler. (A.R. at 472–510.) Because neither party refers to Dr. Culler's medical reports in their arguments, the Court will not discuss them.

3

the Social Security Administration." (Doc. 1 at 4–8.) Ms. Money requests social security benefits from November 2008 and costs. (*Id.* at 8.)

The Magistrate Judge found that substantial evidence supported the ALJ's factual findings, recommended that the Court deny Ms. Money's Motion for Summary Judgment (Doc. 7), and recommended that the Court grant the Commissioner's Motion for Judgment on the Pleadings (Doc. 9). (Doc. 13 at 11.) The Magistrate Judge did not address the Fifth Amendment contentions, and Ms. Money did not object. In any event, there is no support in the record for Ms. Money's claim that the ALJ was biased against her, had made up her mind before the hearing, or did not write her own decision. Therefore, the Court will focus its attention on the one substantive issue presented by Ms. Money's objections: whether there is substantial evidence to support the ALJ's findings in light of her treating psychiatrist's new report.

## II. STANDARD OF REVIEW

Under the Social Security Act, a court must uphold an ALJ's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). In reviewing an ALJ's decision for substantial evidence, a court must not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (second alteration in original) (internal quotation marks omitted).

## III. PHYSICAL IMPAIRMENTS

Ms. Money objects to the Magistrate Judge's implicit conclusion that she was no longer disabled based on her physical impairments from the October 2000 accident. (Doc. 15 at 1–3.)

4

In particular, Ms. Money objects to the portion of the Recommendation that adopts the ALJ's findings that, as of December 1, 2004, (1) she had no physical impairments that met or equaled the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1; (2) she had experienced medical improvement in the physical condition that the Commissioner had initially found to be disabling; and (3) the medical improvement was related to her ability to work. (*Id.*; *see* A.R. at 16–17.) These findings are supported by substantial evidence. The medical records are clear that Ms. Money's fractures had healed by December 2004, that the listed impairment of non-union no longer existed, and that this medical improvement was related to her ability to work. (A.R. at 357, 360); *see* 20 C.F.R. § 404.1594(c)(1), (c)(3)(i).

In addition, Ms. Money objects to the portion of the Recommendation that adopts the ALJ's findings regarding her physical limitations. (Doc. 15 at 1, 2–3.) The ALJ found that, as of December 1, 2004, Ms. Money's physical impairments continued to cause more than minimal limitation in her ability to perform basic work activities but that she still had the residual functional capacity to lift, stand, and sit at specified levels. (A.R. at 17–21.) The ALJ determined that Ms. Money's physical impairments limited her to, among other things, (1) lifting ten pounds frequently and twenty pounds occasionally; (2) sitting for six hours a day, standing for two hours, and walking for two hours; and (3) frequent handling, fingering, and pushing and pulling of arm controls. (*Id.* at 17.) Two non-examining physicians prepared assessments of her physical residual functional capacity after December 2004 that are generally consistent with the ALJ's determination. (*Id.* at 383–90, 408–15); *see Johnson*, 434 F.3d at 657 (stating that an ALJ may give such an opinion "significant weight" if the non-examining physician "thoroughly reviewed [the claimant's] medical records, the objective medical evidence supports [the physician's] conclusion, and [the] opinion is consistent with the other medical opinions"). The

medical reports from the treating and consulting physicians who examined Ms. Money were not specific as to how long she could stand, sit, or walk or how much she could lift but at least in part indicated she was generally doing well (A.R. at 459, 466), with normal range-of-motion and good strength (*id.* at 357).  This constitutes substantial evidence supporting the ALJ's findings.

The administrative record contains evidence corroborating Ms. Money's statements about her physical impairments.  For example, Dr. Mohammed Athar, a consulting physician who examined Ms. Money, found that she would have difficulty working outside the home because of constant pain in her hands.  (*Id.* at 358.)  However, the ALJ was not required to accept this finding, which was not entitled to the heightened evidentiary value given to the opinions of treating physicians.  *See* 20 C.F.R. § 404.1527(d)(2) (providing that the opinion of a treating physician is generally "give[n] more weight" than the opinion of a consulting physician or a non-examining physician); *accord Wilkins v. Sec'y*, 953 F.2d 93, 96 (4th Cir. 1991) (en banc).  Similarly, the ALJ was not required to accept Ms. Money's testimony about the degree of her pain.  *See Hines v. Barnhart*, 453 F.3d 559, 565 (4th Cir. 2006); *Johnson*, 434 F.3d at 657.

## IV. MENTAL IMPAIRMENTS

The ALJ also found that Ms. Money was not disabled based on her mental impairments.  (A.R. at 20–21, 22.)  Ms. Money contends that when the entire record is considered, including the additional medical report from Dr. Thotakura, there is not substantial evidence to support the ALJ's decision.  (Doc. 15 at 2–3.)

### A. The Record before the ALJ and the ALJ's Findings

It is undisputed that since the death of her twelve-year-old son in 1988, Ms. Money has suffered from severe recurrent episodes of depression and has received psychiatric care off and on for years.  (A.R. at 349.)  After the 2000 accident, her mental state worsened and she began to

6

suffer from post-traumatic stress disorder ("PTSD") and anxiety attacks. (*Id.* at 350.) She continued to seek psychiatric treatment when she could afford it, taking prescribed medications that included, among other things, Prozac, Ativan, Depacote, and Abilify. (*Id.* at 463–64.) On the other hand, the records of a former treating psychiatrist, Dr. Adrian Griffin, show that from time to time Ms. Money had "no delusions, illusions, hallucinations, and no suicidal ideations" (*id.* at 350), "did very well on Prozac" (*id.*; *accord id.* at 347), and had worked through her PTSD "quite adequately" (*id.* at 351; *accord id.* at 350).

Two non-examining psychologists reviewed the medical records in this time frame and checked boxes indicating that Ms. Money could, among other things, remember locations and work-like procedures, understand and remember very short and simple instructions, and carry out very short and simple instructions. (*Id.* at 363–64, 416–17.) Neither treating psychiatrist addressed these issues in their office notes, nor was there a recent personal examination by either a consulting psychiatrist or a consulting psychologist.

The ALJ recognized that it would be helpful to hear from Ms. Money's current psychiatrist about Ms. Money's mental limitations and held the record open for that purpose. (*Id.* at 21.) For reasons not stated in the record, Ms. Money's attorney did not provide this report until a few days after the ALJ's decision.

B. **Evidence Presented to the Appeals Council**

The Appeals Council considered Dr. Thotakura's June 3 report as additional evidence in denying the request for review of the ALJ's decision.[2] (*Id.* at 9); *see* 20 C.F.R. § 404.970(b);

---

[2] The Commissioner now contends that the June 3 report is not additional evidence under 20 C.F.R. § 404.970(b) (providing that the Appeals Council must consider additional evidence if it is (1) new; (2) material; and (3) "relates to the period on or before the date of the administrative law judge hearing decision"). Specifically, the Commissioner argues that the June 3 report does not relate to the relevant time period because it does not speak to Ms. Money's condition on or

7

*accord Wilkins*, 953 F.2d at 95. When the Appeals Council considers additional evidence but denies review, the court must review the entire record, including the additional evidence, to determine whether the ALJ's decision is supported by substantial evidence. *Wilkins*, 953 F.2d at 96. In reviewing the entire record, the court must not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (second alteration in original) (internal quotation marks omitted). A court must reconcile its countervailing duties to consider the entire record and to avoid resolving conflicts in the record. *See Davis v. Barnhart*, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005).

After considering the entire record, courts occasionally have remanded the case to the Commissioner for reconsideration in light of the additional evidence. *E.g.*, *Wilkins*, 953 F.2d at 94–95, 96; *Thomas v. Comm'r*, 24 F. App'x 158, 162 (4th Cir. 2001) (per curiam); *Davis v. Astrue*, No. 3:07cv00010, 2008 U.S. Dist. LEXIS 58072, at *9–10 (W.D. Va. July 24, 2008). These cases tend to be fact-specific, to arise in a variety of circumstances, and to phrase the reason for the remand in different ways. For example, a remand is necessary if the additional evidence:

- creates "ambiguity in the record," *Thomas*, 24 F. App'x at 162;
- conflicts with the existing record, *Riley v. Apfel*, 88 F. Supp. 2d 572, 580 (W.D. Va. 2000)
- presents "material competing testimony," *id.* at 580 n.14;

---

before December 1, 2004. (Doc. 16 at 4.) This argument lacks merit. Under § 404.970(b), new and material evidence must "relate[] to the period *on or before the ALJ made [her] decision*." 20 C.F.R. § 404.970(b) (emphasis added). Although Dr. Thotakura conducted the examination and drafted the report four days after the ALJ's decision, Dr. Thotakura uses language indicating that certain symptoms began in the past and continue into the present. (A.R. at 471.)

- is "potentially contradict[ory]," *McCartney v. Astrue*, No. 5:07CV103, 2008 U.S. Dist. LEXIS 72121, at *9 (N.D. W. Va. Sept. 22, 2008);

- raises unaddressed issues, *Wilkins*, 953 F.2d at 94–95, 96; or

- "calls into doubt any decision grounded on the prior medical reports," *Ridings v. Apfel*, 76 F. Supp. 2d 707, 710 (W.D. Va. 1999).

By contrast, if the additional evidence is consistent with the entire record, the court may decide the case without a remand. *See Freeman v. Halter*, 15 F. App'x 87, 89 (4th Cir. 2001) (per curiam); *Hollar v. Comm'r*, No. 98-2748, 1999 U.S. App. LEXIS 23121, at *4 (4th Cir. Sept. 23, 1999) (per curiam); *King v. Barnhart*, 415 F. Supp. 2d 607, 610–13 (E.D.N.C. 2005).

In this case, the June 3 report calls into doubt the ALJ's decision "grounded on the prior medical reports" and presents material competing testimony. *See Ridings*, 76 F. Supp. 2d at 710. It also includes additional objective medical evidence regarding Ms. Money's diagnoses and symptoms that creates "ambiguity in the record" and raises new issues. *See Thomas*, 24 F. App'x at 162; *Wilkins*, 953 F.2d at 94–95, 96.

The ALJ concluded that Ms. Money was not disabled, in part because her anxiety and depression required only mild or moderate restrictions in her residual functional capacity. (A.R. at 16, 17–21.) In drawing this conclusion, the ALJ relied on general statements by Dr. Griffin and Dr. Thotakura, as well as on the report of a non-examining psychologist. (*Id.* at 20–21.) The ALJ discounted testimony from Ms. Money about the "intensity, persistence and limiting effects of [her] symptoms" as inconsistent with objective medical evidence. (*Id.* at 18–19, 20–21; *see id.* at 521–24, 529–33.) Though the ALJ did not expressly so state, she also appears to have discounted the testimony of Ms. Money's husband about the ways Ms. Money's mental health affected her daily life. (*See id.* at 18–19.)

The June 3 report raises substantial questions about the validity of the conclusions of the non-examining psychologist who reviewed medical records and opined about Ms. Money's ability to follow directions and work with others. The report of the psychologist is the only direct evidence supporting the ALJ's conclusions that Ms. Money could "understand[] . . . and carry out simple instructions, respond appropriately to supervisors, respond appropriately to coworkers, handle changes in work place and maintain attendance."[3] (*Id.* at 17.)

The June 3 report is directly and specifically contrary to the non-examining psychologist's report. In the face of this report from a treating physician, it is not clear that the non-examining psychologist's report should be given any weight at all. *See Johnson*, 434 F.3d at 657 (stating that an ALJ may give such an opinion "significant weight" if the non-examining physician "thoroughly reviewed [the claimant's] medical records, the objective medical evidence supports [the physician's] conclusion, and [the] opinion is consistent with the other medical opinions"); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986) (stating that "a non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits" (internal quotation marks omitted)).

In addition, the June 3 report is inconsistent with the interpretation that the ALJ gave to Dr. Griffin's treatment notes and to Dr. Thotakura's earlier treatment notes. As noted *supra*, in 2004, Dr. Griffin observed that Ms. Money had "no delusions, illusions, hallucinations, and no suicidal ideations" (A.R. at 350), "did very well on Prozac" (*id.*; *accord id.* at 347), and had worked through her PTSD "quite adequately" (*id.* 351; *accord id.* at 350). His treatment notes contain similar statements of a general nature concerning her memory, thought processes/organization, and other aspects of her mental condition. (*Id.* at 347, 348, 352.) In

---

[3] The ALJ also found that Ms. Money could "remember" simple instructions. (A.R. at 17.) Dr. Griffin's treatment notes regarding Ms. Money's memory do provide support for this conclusion.

2005, Dr. Thotakura reported that Ms. Money was "doing fairly well," that "[h]er thought processes were normal and organized," and that "her memory was intact." (*Id.* at 21.) The ALJ appears to have interpreted these statements to mean that Ms. Money was not disabled, but the treatment notes contain much information indicating that these statements were meant in a relative manner and that Ms. Money was not at all "well."[4] (*Id.* at 347–52, 461–64.)

The June 3 report also provides medical corroboration for the testimony of Ms. Money, which the ALJ discounted because of the absence of such corroboration. (*Id.* at 19.) It also supports the testimony of Ms. Money's husband, who testified that "her nerves are very, very touchy" (*id.* at 529), that she has several anxiety attacks a week (*id.* at 530), that he tries to "keep people away from her" when she has episodes (*id.* at 528), and that she has "[r]eal strong mood swings and a lot of, you know, crying" (*id.* at 531–32).[5]

Finally, the June 3 report is likely to alter the assessment of Ms. Money's residual functional capacity and the jobs she may be able to perform in the national economy. For example, the new diagnosis of panic disorder with agoraphobia could mean that Ms. Money may not be able to hold a job that requires "frequent . . . contact with the general public" and "work in close proximity to coworkers." (*Id.* at 17–18.) The new diagnosis of "bipolar with psychotic symptoms" and "constant crying spells" also could hinder Ms. Money in "respond[ing]

---

[4] For example, Dr. Griffin noted that he wanted to switch Ms. Money to a different medicine from Prozac (A.R. at 347), indicating that perhaps it was not working well. He also noted that Ms. Money was "addicted to milk" to the extent that her consumption was causing serious diarrhea. (*Id.* at 347, 348.) Dr. Thotakura observed that Ms. Money was anxious, tearful, and depressed on a consistent basis. (*Id.* at 228, 257, 365, 419, 461–64.) In the last treatment session before the ALJ hearing, Dr. Thotakura even noted that Ms. Money had suicidal ideation. (*Id.* at 464.)

[5] The ALJ did not explain why she did not credit the detailed testimony of Mr. Money about his wife's mental health. *See Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

11

appropriately to supervisors . . . [or] coworkers, handl[ing] changes in work place and maintain[ing] attendance." (*Id.* at 17.)

Although the vocational expert testified that Ms. Money would be able to perform several types of jobs, this testimony was predicated on the ALJ's hypothetical question that assumed that Ms. Money had been diagnosed with certain mental conditions but still could have "frequent contact" with the general public, could "understand, remember and carry out and make simple work related decisions to carry out these instructions," and could "respond appropriately to supervision, can handle changes in work place setting, can maintain regular time and attendance." (*Id.* at 536.) Notably, this hypothetical question never mentioned Ms. Money's history of anxiety attacks. When Ms. Money's attorney asked a hypothetical question that assumed that Ms. Money had "manic depression attacks every two[] [or] three weeks" and required the vocational expert to rely on her own observations of Ms. Money during the hearing, the vocational expert changed her answer. (*Id.* at 537–38.) The expert testified that:

> An individual who has the type of limitations that have been described would not be able to work at any exertional level, *particularly because of the mental issues* that have been brought up. The attention and concentration would be severely affected in a negative fashion. The individual would not be able to be punctual coming to and from work . . . . [The individual] [m]ay have to leave the work station numerous times during the day. Employers generally cannot accommodate those types of limitations.

(*Id.* at 538 (emphasis added).)

When viewed through the prism of Dr. Thotakura's June 3 report, the record as a whole presents an entirely different picture of Ms. Money's situation. The ALJ should be given the opportunity to revisit this case in light of this new and material evidence. Thus, pursuant to sentence four of 42 U.S.C. § 405(g), the Court will remand this case so that the ALJ may reconsider the matter in light of the June 3 report. It is outside the purview of this Court to

weigh such evidence. *See Johnson*, 434 F.3d at 653.

### C. Evidence Presented to the District Court

Ms. Money also submitted additional evidence to this Court more than six weeks after the issuance of the Recommendation. (Doc. 17 at 1–2.) This evidence consists of a report, dated October 25, 2010, from Dr. Thotakura regarding Ms. Money's mental condition. (*Id.*) The Commissioner moved to strike this report from the record. (Doc. 19 at 1; *see* Doc. 20 at 1–3.) As noted above, a remand is required even without considering the October 2010 report. The Court has not considered this report, though the ALJ may wish to do so on remand. The motion is denied as moot.

## V. COMBINATION OF IMPAIRMENTS

Substantial evidence does not support the ALJ's decision as to the combined effect of Ms. Money's physical and mental impairments. In particular, the ALJ failed to explain adequately her evaluation of the combined effect of Ms. Money's impairments. Even if the explanation were adequate, a remand is necessary to take into account the new and material evidence in Dr. Thotakura's June 3 report.

Under 42 U.S.C. § 423(d)(2)(B), an ALJ must consider the combined effect of all physical and mental impairments when determining a claimant's disability status. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (per curiam); *Hicks v. Gardner*, 393 F.2d 299, 301–02 (4th Cir. 1968). An ALJ must consider "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately" would be of a sufficient medical severity to constitute a "listed impairment." 42 U.S.C. § 423(d)(2)(C); *accord* 20 C.F.R. §§ 404.1523, 404.1526(a); *see also* 20 C.F.R. § 404.1525(e) (requiring ALJs to consider all impairments in combination when

assessing the residual functional capacity); SSR 96-8p (same). This statutory and regulatory requirement compels the ALJ to consider the cumulative, compounding, or synergistic effect of the claimant's individual impairments instead of "fragmentiz[ing]" them or evaluating them in isolation. *Walker*, 889 F.2d at 50 ("It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity."); *accord, e.g.*, *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *Oppenheim v. Finch*, 495 F.2d 396, 398 (4th Cir. 1974); *Washington v. Comm'r*, 659 F. Supp. 2d 738, 745 (D.S.C. 2009); *Lemacks v. Astrue*, No. 8:07-2438-RBH-BHH, 2008 U.S. Dist. LEXIS 110165, at *10 (D.S.C. May 29, 2008), *adopted by* 2008 U.S. Dist. LEXIS 47350 (D.S.C. June 18, 2008). In other words, the ALJ must view the individual claimant as a whole person.

"As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effect of the impairments." *Walker*, 889 F.2d at 50. The ALJ must make a "particularized," or "specific and well-articulated," finding regarding the combined effect. *Hines*, 872 F.2d at 59 ("The ALJ must make a *particularized finding* on the effect of the combination of impairments." (emphasis added)); *Cook v. Heckler*, 783 F.2d 1168, 1174 (4th Cir. 1986) (stating that the ALJ must make a "*specific and well-articulated finding* as to the effect of the combination of impairments" (emphasis added)). The ALJ may not merely consider each impairment in isolation.[6] *Cook*, 783 F.2d at 1174 (holding that the agency decision "improperly focused on each of [the claimant's] impairments separately and failed to consider

---

[6] Unlike some circuits, the Fourth Circuit has not held that a separate discussion of impairments is sufficient to satisfy the "in combination" analysis. *Compare Cook*, 783 F.2d at 1174, *with Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (holding that "the ALJ properly considered the combined effects of [the claimant's] impairments" by separately discussing each of the impairments), *and Gooch v. Sec'y*, 833 F.2d 589, 592 (6th Cir. 1987) (per curiam) (same).

14

their combined effect"). The ALJ also may not include a conclusory statement that the claimant does not have an impairment or combination of impairments that meets a listed impairment. *Walker*, 889 F.2d at 50.

In this case, the ALJ failed to explain adequately her evaluation of the combined effect of Ms. Money's physical and mental impairments. The ALJ summarily stated that "[s]ince December 1, 2004, the claimant did not have an impairment or *combination of impairments* which met or medically equaled the severity of [a listed] impairment." (A.R. at 16 (emphasis added); *accord id.* ("Considered individually *and in combination*, the claimant's impairments present as of December 1, 2004 did not meet or medically equal a listing." (emphasis added)); *see also id.* at 17 ("As of December 1, 2004, the claimant continued to have a severe impairment or *combination of impairments* . . . ." (emphasis added))). In evaluating Ms. Money's residual functional capacity, the ALJ noted that she "ha[d] considered all symptoms." (*Id.* at 18.) In each instance, however, the ALJ considered Ms. Money's physical and mental impairments individually and in separate paragraphs. (*Id.* at 16, 18–19.) The ALJ's decision is utterly devoid of any explicit discussion of how the physical impairments contributed to, or exacerbated, the mental impairments, or *vice versa*.

Mere inferences cannot satisfy the requirement of an adequate explanation. *Saxon v. Astrue*, 662 F. Supp. 2d 471, 480 (D.S.C. 2008). For example, even though the ALJ used boilerplate language to acknowledge the requirement to consider the combined effects of the impairments (A.R. at 14, 16, 17, 18), such conclusory statements are insufficient to constitute a "particularized," or "specific and well-articulated," finding. *See Walker*, 889 F.2d at 50; *Brascher v. Astrue*, No. 3:10CV256, 2011 U.S. Dist. LEXIS 46996, at *13–14 (E.D. Va. Mar. 11, 2011), *adopted by* 2011 U.S. Dist. LEXIS 47067 (E.D. Va. Apr. 29, 2011); *Davis v. Astrue*,

No. 1:10-1429-HMH-SVH, 2011 U.S. Dist. LEXIS 51724, at *42 (D.S.C. Mar. 31, 2011), *adopted by* 2011 U.S. Dist. LEXIS 51617 (D.S.C. May 12, 2011). The ALJ likewise cannot rely on the listing of physical and mental impairments in the assessment of the claimant's residual functional capacity. *See Simmons v. Comm'r*, No. 4:10-00023-HFF-TER, 2011 U.S. Dist. LEXIS 27739, at *3 (D.S.C. Mar. 15, 2011); *Alonzeau v. Astrue*, No. 0:06-2926-MBS-BM, 2008 U.S. Dist. LEXIS 7749, at *10–11 (D.S.C. Feb. 1, 2008); *see also Hair v. Astrue*, No. 5:10-CV-309-D, 2011 U.S. Dist. LEXIS 77236, at *14–15 (E.D.N.C. June 16, 2011) (noting that the assessment of a claimant's residual functional capacity is not a substitute for other aspects of the ALJ's analysis because it is "subject to different standards and requirements"), *adopted by* 2011 U.S. Dist. LEXIS 74461 (E.D.N.C. July 11, 2011).

Even if the explanation were adequate, a remand is necessary to account for the new and material evidence in Dr. Thotakura's June 3 report. As discussed *supra*, Dr. Thotakura provided new objective medical evidence regarding Ms. Money's diagnoses and symptoms. This evidence could alter the ALJ's analysis of the combined effects of the physical and mental impairments.

Thus, by considering Ms. Money's impairments in isolation, the ALJ failed to make the requisite "particularized," or "specific and well-articulated," findings regarding their cumulative, compounded, or synergistic effect. *See Walker*, 889 F.2d at 50; *Hines*, 872 F.2d at 59; *Cook*, 783 F.2d at 1174. Without this information, which is necessary to enable judicial review of the ALJ's decision for substantial evidence, the Court finds that Ms. Money is entitled to have her claim remanded to the Commissioner for proper consideration of the combined effect of her physical and mental impairments. This remand should not be construed to indicate that the Court

has an opinion regarding whether Ms. Money is entitled to disability insurance benefits under the Social Security Act.

## V. CONCLUSION

The Court has conducted a de novo review of Ms. Money's objections and has examined the supporting briefs, the applicable law, and the record. For the reasons set forth above, it is hereby ORDERED AND ADJUDGED that:

1. The Recommendation of the Magistrate Judge is ACCEPTED in part and REJECTED in part;
2. Ms. Money's motion for summary judgment (Doc. 7) is DENIED;
3. The Commissioner's motion for a judgment on the pleadings (Doc. 9) is DENIED;
4. The Commissioner's motion to strike Dr. Thotakura's report of October 25, 2010, from the record is DENIED; and
5. The final decision of the Commissioner is REVERSED pursuant to sentence four of 42 U.S.C. § 405(g) and REMANDED to the Commissioner of the Social Security Administration for further consideration.

United States District Judge

August 26, 2011